Court, Theodore Cox, for Petitioner Qiaoli Zheng. I would respectfully request four minutes of rebuttal, with the Court's permission. Your Honors, in this case, even a cursory review of the BIA decisions on review here, in light of the background submitted both on appeal, with respect to which administrative notice was requested, and also what was submitted in a motion to reopen based on ineffective assistance of counsel, supported by appropriate bar complaints. It was a complete motion, not lacking filing, and also a timely motion within 90 days of the initial BIA decision. It is the — I think the record compels the conclusion that the Board did not adequately consider any of the evidence that tends to show that the implementation of the family planning policy in Ms. Zheng's home province of Fujian is coercive and meets the standard of more likely than not that she would be forced sterilization under the one-child policy were she to be returned to China. The policy has been lifted since then, right? The — well, we've all read the news reports that there has been just a very recent change, but that's not — with all due respect, that's not in this record and it's not before the Court. That's something that might be considered, if at all, on remand if the government — But the policy is gone. Doesn't that moot the entire controversy? No, it does not on this record, because the Court cannot consider news reports that have just happened last week, for example. It's not — we — this Court can only review what the BIA decided at the time, with the record before the BIA, at the time it made those decisions. And, in fact, the policy is not lifted. There is — there has been a possible two-child policy pending implementation province by province, which has not happened in Fujian province to date. So, in fact, the — in Fujian it has not changed, according to today's circumstances. But even that fact is not before this Court. This Court must review the record according to the existing record and not supplement it just based on hearsay or news reports. Otherwise — Well, but sometimes things happen that moot out the case that are outside the record. Let's say the petitioner dies. That moots the case, right? That would — yes, that would moot the case, Your Honor. Even though that's not in the record. So there are certain facts — there are certain things that happen in the real world because they go to questions of mootness and, therefore, jurisdiction that we can — you know, we have to make some sort of determination. I mean, the death of one of the parties is sort of a classic example, but there are other instances of stuff happening in the real world that moots the controversy. So this is unlike record review. This is the question, is there still a lot of controversy here? Right. That could be considered by, you know, a court below, but not by this Court, Your Honor. I mean, it's — having all the cases that I'm aware of say that the Court is bound by the record and cannot go outside the record. Even in determining mootness? I beg your pardon? Even in determining mootness? Right. And, Your Honor, this is — Well, then you're mistaken on that score. I beg your pardon? You are mistaken on that score. If it's a question of mootness, we can certainly go outside the record. All sorts of stuff happens. But it's not moot because it has not been — Well, you can argue it's not moot. That you can argue. But saying it's not in the record is not going to get you very far. So the question you should address is if the facts are as they appear to be in the news, and we have ways of determining these things if we have to, does the case become moot? Right. But that's something that I — that Ms. Geng should have an opportunity to argue based on report — you know, material filed to an administrative court, the BIA, which — with respect to which I could file my own background material saying that it's in Fujian Province. It's not moot because it has — it's supposed to be implemented province by province, and it has not yet been implemented in Fujian Province, even though it's kind of like an intention. It could be in fact moot in some future time, but today it's not moot. And so that determination of a future condition could be considered. I'm sorry? Eventually all controversies become moot. That's right. If you just wait long enough. Yes. I mean, I'm not blind to reality of the news reports, but there is no change on the coerciveness of the policy. There is a potential change of whether — you know, how many children are in effect in violation of the policy. And the record in this, you know, it's clear that two children so far that from the — record from the — even the Chinese government Fujian Province family planning policy is that it must be sterilized. And another — Well, with respect to that — I'm sorry? With respect to that aspect, counsel, I'm interested in the documents from the Guantou Town Committee. To what extent were they before the IJ? And what is your position on the relevance of those documents? Well, that simply says that according to — that's not — it's somewhat helpful. According to the Fujian family planning laws that even with children born overseas, you're subject to forcible sterilization. This — and I would add that, you know, this — Ms. Jiang has violated another part of the family planning law where you have to wait four years after one child to have another child. And so she waited, I think, two years. It's a separate independent violation. And the record is clear on this record that she is subject to forcible sterilization. I mean, as to the mootness — Well, what is the basis for your contention that she's subject to forcible sterilization? Well — Is it the Guantou policy or is it something else? The Fujian — I mean, we have the — Well, what is it in the record that supports that position? Well, the — we have websites from — that were found by the Seventh Circuit to be authentic and reliable. I'm talking about — what's in this record? What was before the IJ? Well, this was the same record as in the Second — Seventh Circuit Chu case and the Ni case. Both cases are mostly the same record. They were my cases. And they show that from the — You're moving — you're moving to they. Now, just — I'm sorry. You can't use the Seventh Circuit cases. All we have to do is rely on you. We don't have you in our record. I can get in it. I mean, I'm sorry about that. You're right. No, you can't get into it. That's the point. My contention is that the — those — I simply — the reason I refer to those cases is because they speak to the same evidence which I've also filed in this case. Could you just answer the question pertaining to this record and not the Seventh Circuit? Yes, Your Honor, of course. Judge O'Scanlan is entitled to an answer. I'm sorry. Could you repeat the question, please? What was before the IJ with respect to the compulsiveness of this policy? Was it based on the Guantou Town Committee documents? No. Was not. Right. So you're not relying on that in this appeal? Well — I mean, what is it that — obviously, your burden is to establish that the decision of the BIA was not supported by substantial evidence. Yes, Your Honor. Okay. What is the key piece of either lack of evidence or evidence in your — the half that supports your contention? Well, a couple of things. The BIA had said that, for example, there's — you know, children born in the U.S. don't count, and therefore, they go back as some other status, and that they — Did the IJ say that in this case? Yes. The IJ said they don't count. Right. All right. That's based on the 2007 profile, which was the only thing that the IJ considered and the only thing that the BIA considered to the exclusion of all other evidence in the entire record. And we — You just tell me something I understand. The IJ specifically said, I do not consider any other evidence except this evidence? She only cites to the 2007 profile and no other evidence. I understand that. But did the IJ specifically state that she is not considering any other evidence other than this? Oh, no. Of course she didn't say it. That was your — that was your argument. Oh, I — to clarify, she mentions the — that 2007 profile, but not other evidence. And before the IJ was the 2009 State Department Human Rights Report, which quite conflicts with that 2007 profile by saying that the — the target management system places powerful incentives for a coercive enforcement of the policy because the enforcer will be fired by not grabbing that person who should be sterilized and is not yet sterilized. So that is the internal mechanism which underlies enforcement, as is shown by my voluminous documents, internal reports that are in this record that say — that give list of people by villages, how many people we need, 10 more sterilizations in Chubai village, and here's the — and it has to be done by this state. This is all in — is how the system works and why it's been so effective. Okay. You're over your time now.  Thank you, Your Honor. We'll hear from the government. Good morning. May it please the Court, Amy Carmichael for the government. This is a consolidated case stemming from two separate board decisions, so there's actually three different issues that are kind of interrelated that are before the Court. The first has to do with the withholding of removal application and this Court's review of that on direct review. The second is the motion to remand that was filed before the Board, and then the third is the motion to reopen that was filed later with the Board. So, first, I want to briefly address the questions that Judge Kaczynski raised regarding mootness. I do believe that the new policy would go to the question of whether or not she continues to have any fear at all of persecution, but that's a factual question more than something that's going to completely kill the legal claim the way that, say, her death would. Well, why is that? If the policy is gone, isn't it just like if she died? The question is about the implementation of the policy. Under the new rules, everybody's allowed to have two children. She has two children. There may still be some factual questions as to what the result would be. I think it certainly demonstrates the futility of remand. If she can't, on this record, show that it's more likely than not she's going to be persecuted, she's certainly not going to be able to meet that standard and meet policy. Well, let me ask you the flip side of that question. I thought it was my understanding that we don't actually deport anybody to China. We do actually deport people to China. We don't. When they are subject to this policy, when the claim is even if they're deportable, even if they're not proved, that's my understanding. We don't actually deport people to China if there is a doubt about the application of the policy. Is that the case? Okay, so in terms of the number of people who get ordered removed versus the number of people who are actually removed, far fewer are actually removed. And the Department of Homeland Security does grant prosecutorial discretion in some instances. However, we do continue to remove people to China. It is dependent in part on DHS's ability to obtain travel documents. But that's not really material to the question of whether or not she is removable. Obtain travel documents from China? Yeah. The Department of Homeland Security has to coordinate with the Chinese consulate and embassy in order to obtain travel documents to ultimately remove people. It does happen routinely. In fact, this particular alien has previously been removed to China, and that's why she's in withholding-only proceedings. Her prior order of removal was reinstated. She was initially deported to China in 1997, and she reentered the United States unlawfully in 2001. So removals do still happen, provided that there is a removal order in place and DHS is able to obtain those travel documents. DHS does grant PD prosecutorial discretion in some instances and defer removal. At this juncture, DHS has declined prosecutorial discretion for this alien, although she, if her removal order is affirmed, she may seek to have that removal deferred. Does that answer your question? Could I ask you a question? Yes. There's discussion in the record about what will happen when she returns to China with two American citizen children. Yes. And as near as I can tell, the only problem would be financial. They are like any other foreign children. If they're not native children, they have to pay certain fees for education. Yes. And she's not being treated, those children are not being treated any different than any other noncitizen children. Correct. But she has the option of making them citizens and then not suffer the fee. Correct. If she has them, there's basically two paths. One is paying the additional fees so that they can obtain services that citizens are obtained by virtue of being citizens. And the second route is having them added to the household registry. There is some dispute in the record as to what the effect of adding them to the household registry would be. For out-of-plan births, children who are on the household registry are ordinarily fined. So if she adds them to the household registry, it's likely to still be some sort of financial it's really like a financial disincentive to have additional children. So even if she puts them on the household registry, it's likely only going to be a fine of some sort, if anything, as opposed to forced sterilization. Counsel, I'm trying to pursue the claim that Mr. Cox made that his client would be persecuted in China, particularly in Fujian province. And as I understand it, the particular area in which she would be going back to requires that she file as a that she register as a foreigner for family planning purposes. And in that particular province, when I gather this is all set forth in the Guantou town committee documents, to what extent did the IJ take into account those documents in reaching his decision that there would not be persecution here? Well, as a preliminary matter, as the immigration judge identified, this particular petitioner is from Fuzhou city in Tianjin, in Fujian, not Guantou city. So that is one relevant consideration. Those documents demonstrate, again, though, that they outline administrative punishments and fines, as opposed to coercive forced sterilization as the primary means of enforcing the family planning policy. The State Department report, which the immigration judge gave credit to, states, and this is true actually of the supplementary documents that the petitioner submitted on the appeal to the board and again in the motion to reopen, is that the enforcement of the policy varies wildly, even sometimes within the same province. The fines aren't routine. They're not the same every time. It varies not only within the province, but the same official might not give the same fine to the same person. Looking at that evidence, it's very important to recall that she is seeking withholding of removal. She's not eligible for asylum, which means that she's required to demonstrate that it is more likely than not that she will be persecuted, not merely that she has a well-founded fear. And that the fact that Well, does she have to register or not? I think one of the problems, Your Honor, is that the record doesn't conclusively demonstrate one way or the other. There's conflicting evidence. Well, that could be for the benefit of the petitioner in this case. There's conflicting evidence coming from within the provinces, from the State Department. The immigration judge weighed that evidence and concluded that she did not meet the burden of proving that it was more likely than not that she would be persecuted. Did the immigration judge take into account that she would have to register for family planning purposes as someone who has already two children? The immigration judge went through the various exhibits, said and said even there were kind of two parts. The first part is American citizen children are treated differently. They might not have to be put on the household register. But even if they are, then it's administrative fines that are, it's administrative punishments. Based on what? Based on what? Is it a document? Is it a Chinese statute? What is it? It's from a couple of different sources. One is the State Department report, which outlines the administrative incentives in order to get compliance with the policy. Most people are fined. They're kicked out of the party. They are often dismissed from jobs, things like that. But even the Gantu City document. So your contention is that there is nothing that this Petitioner has introduced into the record which would overcome that description of what the actual treatment is? Correct. And certainly would not compel that conclusion. Very well. Thank you. Unless the Court has additional questions. Okay. Thank you. Thank you. Case just argued, stand submitted.
judges: Wallace, Kozinski, O'Scannlain